TYREE PHILMON, ET UX v. MID-STATE HOMES, INC.

4714                                    434 S.W. 2d 84

Opinion Delivered November 25, 1968

*Wayne Foster* for appellants.

*Spencer & Spencer* for appellee.

CARLETON HARRIS, Chief Justice.   On July 11, 1962, appellants, Tyree Philmon and wife, executed a promissory note and mortgage to Jim Walter Corporation securing the sum of $4,464.00, payable in 120 monthly installments of $37.20 each, payments to commence on

September 12, 1962, and payable thereafter on the 15th day of each month. The note and mortgage were assigned to appellee, Mid-State Homes, Inc. The money borrowed was used in the construction of a Shell home, which has been occupied by appellants since that time. On March 24, 1968, suit was filed by appellee, seeking judgment in the amount of $2,497.40, and asking for foreclosure, if that amount, together with attorney's fee and costs be not paid. Appellants asserted that a letter dated March 7, 1967, was ineffective as far as constituting a presentment of the note and an acceleration because of the fact that they were not in default on that date; further, that even had they been in default, appellee had waived its right of acceleration, and could not assert it. After hearing evidence, the trial court found that there had been a default and an acceleration, and that appellee was entitled to the foreclosure judgment; however, the court stated that a tender of the amount due had been made in open court, but that appellee had been put to trial in order to resolve the issue, and was accordingly entitled to an attorney's fee and the costs of the action. Thereupon, the court stated that if the sum of $698.94, together with attorney's fee and costs of the action be tendered and paid, the petition for foreclosure would be denied; otherwise, it would be granted. Appellants were unwilling to pay the costs and attorney's fee, and a decree of foreclosure was entered. From such decree, comes this appeal

The factual background is as follows: Appellants were frequently late in making their payments; for instance, the transcript shows that the August 15, 1966, payment was received in September; the September payment received in October; the October payment received in November; the November payment received in December, and the December payment, due on the 15th, received on January 24, 1967. After another month, the January payment had not been made. According to Herbert Clarkson, an employee of Mid-State Homes, living in Tampa, Florida, and in charge of collections

for the Arkansas area, the company decided, on February 28, 1967, to exercise its right of acceleration, and the Philmon account card reflects that it was placed in foreclosure on that date. The Philmon account was sent to the company's attorney on March 1, and the attorney directed a letter to the Philmons on March 7, advising that the note and mortgage had been turned over to him. The Philmons were informed that the company would accept payment of the past due installments, together with past due insurance premiums, and a $25.00 attorney's fee, totaling $282.34, provided this amount was received by March 21, 1967. The letter closed by stating that, if the loan were not placed on a current basis by that time, the foreclosure would proceed.

The Philmons made no response to this demand, and suit for foreclosure was instituted on March 24, 1967.

In the meantime however, on March 3, the Philmons had mailed the payment which had been due on January 15, and on March 17, the Philmons mailed another payment to take care of the installment due on February 15[1]. It is the contention of appellants that these payments prevented their being in default; that when the note was presented and accelerated on March 7, there was no delinquency entitling appellee to acceleration, for, it is argued, under the provisions of the note, the February payment did not become delinquent until March 15, and when the note was accelerated, the Philmons were no longer in default.

The record reflects that appellants had lacked $10.00 of making a full payment on one occasion, contending that this shortage occurred for the payment due on February 16, 1964; also, one payment was $2.00 short. Further, insurance premiums due to be paid by appellants, but not paid, in the amount of .$128.94, were

---

[1]Thereafter, appellants paid the amounts due into the registry of the court.

charged to the account on August 15, 1965. Appellants seem to be under the impression that appellee is relying entirely upon these delinquencies to support its right of acceleration, and it is argued that, as to the $10.00 and the insurance premium, extensions were granted thereafter, an extension charge being made, and that in granting these extensions for consideration, appellee lost its right to accelerate the indebtedness[2]. As to the $2.00 charge, appellants assert that the doctrine of *De minimis non curat lex* would surely apply.

It is not necessary to pass on the question of whether the failure to make these payments would constitute grounds for acceleration, for appellants either overlook, or ignore, the fact that the *balance was accelerated on February* 28, 1967, and the file forwarded to appellee's attorney the next day. At that time, irrespective of the three money items heretofore mentioned, appellants were delinquent in their payments, for the January 15, 1967, payment became delinquent on February 15, 1967, and, in fact, was not sent until after the balance had been accelerated. But, say appellants:

> "For years the Philmons were as often in default as not, but such delinquencies seldom exceeded sixty days, or, if they did, an extension was purchased by which they paid the interest on the principal balance for the privilege of advancing those installments."

It is true that the Philmons were often in default; the record reflects that payments were made irregularly, and 25 or 30 contacts were necessary to collect late payments, but the fact that the company had permitted the Philmons in the past to pay late did not preclude it from accelerating the balance on February 28, 1967. As stated in 59 C.J.S. *Mortgages* § 495(6) at 799 (1949):

---

[2]The last extension was granted on November 15, 1965.

"* * * The acceptance of late payments without accelerating the maturity of the debt secured by the mortgage or deed of trust does not bar the mortgagee from accelerating for default in a subsequent payment. The acceptance of defaulted interest does not prejudice the mortgagee's right to declare the entire mortgage due on a subsequent occurrence of a similar default."

In the instant case, the note contained the provision:

"* * * in the event of default in payment of any installment for a period of thirty days or the failure to fulfill fully and promptly the obligations of the mortgage given to secure this note, the holder of this note may, at its option, declare all of the remainder of said debt due and collectible and any failure to exercise said option shall not constitute a waiver of the right to exercise the same at any other time."

See *Johnson* v. *Guaranty Bank and Trust Company,* 177 Ark. 770, 9 S.W. 2d 3, where we declared such a provision legal and valid, and upheld appellee's action in accelerating the time for payment of the indebtedness.

It is also asserted that the letter of March 7 from appellee's attorney (which appellants claim was not received until after March 17) made demand for nearly $400.00 more than was due on the principal indebtedness, and that $42.00 more was demanded for insurance than was paid out by the company. Admittedly, the mistake was made; however, when instituting suit, appellee sued for the correct amount. Appellants cannot rely upon this fact, for it was not even necessary that appellee give notice of the election to accelerate. The general rule is that, in the absence of a provision in the mortgage requiring notice, the mortgagee need not give such notice. 59 C.J.S. *Mortgages* § 495(5)e. at 793 (1949).

Here, not only was there no provision requiring notice, but to the contrary, the mortgage contains a provision waiving notice, and providing that the option to accelerate may be exercised at any time after default.

Complaint is made that the two payments (heretofore mentioned) sent to the company were retained five months before being returned. It appears from the evidence, however, that these payments were mailed by the company to its attorney within a short time after receiving them, but the attorney apparently overlooked sending them back to appellants for several months. At any rate, this does not affect the legal issue before us, as it had nothing to do with the January delinquency.

Of course, while one is generally inclined to be sympathetic with persons who are losing their homes, the fact remains that a mortgagee is entitled to receive its payments when due, and without going to a lot of additional trouble, and sometimes expense, to obtain its money. Here too, the Chancellor was apparently sympathetic, and he announced in open court that he was prepared to enter what he deemed to be an equitable order. From his remarks:

"* * * The Court finds there has been a default and an acceleration and that the Plaintiff would be entitled to a foreclosure judgment except for this alternate type of decree the Court will enter. It has here this morning received in open Court tender of $698.94. The Court is of the further view that the Plaintiff has been put to trial for the resolvement of the issue and in that event is entitled to the attorney's fee and the costs of the action. Therefore, it will be the order of the Court if the sum of $698.94 with the attorney's fees and costs of the action requested in the Complaint is tendered actually and paid over here, then the petition for foreclosure will be denied. Otherwise it will be awarded."

Appellants declined to pay the attorney's fee and costs, and the decree was accordingly entered. We agree with the Chancellor that the company was entitled to those two items, and the payment of same being refused, there was no error in the court's entering the decree complained of.

Affirmed.