Willis Joseph **BERGERON**, Plaintiff-Appellant,

v.

Darryl **ELLIOT**, Defendant,

H. Raymond Robinson et al., Defendants-Appellees.

No. 72–1074

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Sept. 15, 1972.

Rehearing Denied Oct. 24, 1972.

---

\* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Charles R. Maloney, Donald B. Ruiz, New Orleans, La., for plaintiff-appellant.

J. Dwight LeBlanc, Jr., New Orleans, La., for defendants-appellees.

George W. Reese, Peter J. Abadie, Jr., New Orleans, La., for other interested parties.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

PER CURIAM:

On April 25, 1970, while performing some routine maintenance work aboard his shrimper, the Captain Pip, which was tied up to the Robinson Canning Company Bayou Signette wharf in southern Louisiana,[1] Captain Darryl Elliot lowered one of its trawling booms outward over the water. Thirty minutes to an hour later, Plaintiff, Appellant, Willis Bergeron's small outboard motorboat came into contact with a wire cable suspended from the lowered boom.[2] As

---

1. The Robinson Canning Company allowed its suppliers of fish, the area independent fishermen such as Elliot, to use its wharf free of charge. As it was the off-season, the Captain Pip had been continuously tied to the Robinson wharf for some eight months before the day of the accident. Indeed, Elliot had been using the Robinson wharf for about fifteen years.

2. On deposition, Appellant's best estimate of the width of the canal at the point of the collision was somewhere between 150 and 250 feet. He explained that he had been forced to navigate his small boat under the Captain Pip's lowered trawling boom when a passing boat—which he was not able to name and which has since not been located—crowded him over to the far right side of the canal. According to Appellant, the trawling boom was almost parallel to, and extended from 40 to 50 feet out over, the water. Appellant also explained that there was 6 to 7 feet of clearance between the boom and the water, which afforded plenty of space to navigate his small boat. Elliot, on the other hand, described the boom as being only 26 feet 10 inches in total length and at the time of the collision said it extended out over the water only about 10 feet. Elliot also stated that the cable attached to the lower boom did not come to rest in the water until after the collision.

Of course, we do not make even a whisper of a suggestion as to the resolution

a result of the injuries he there received, Bergeron instituted this *in personam* action in admiralty against Captain Elliot, as owner of the Captain Pip, and against the Robinson Canning Company, as owner of the wharf to which the shrimper had been tied when the accident occurred. Appellant Bergeron here appeals from the Trial Court's entry of summary judgment in favor of the Robinsons,[3] contending that the Court erred: (i) in concluding that there was no legal relationship between the Robinson Canning Company and the Captain Pip and/or its owner and (ii) in failing to recognize that a riparian wharf owner next to a navigable stream has a positive duty not to obstruct the waters of that stream. Finding no merit to these arguments, we affirm.

### Summary Judgment Was Proper

■ In this last ditch effort to establish some theory or other upon which to sustain a recovery against the Robin-

sons, Appellant strenuously contends that enough of a relationship existed between the Robinsons and the Captain Pip and/or Elliot to hold the Robinsons liable in this instance. We have concluded that no such relationship existed.[4]

It is clear that the success or failure of this action against the Robinsons depends upon the validity of Appellant's theory concerning the liability of the Robinsons in their role as riparian wharf owners under 33 U.S.C.A. §§ 403, 409, or similar principles.[5]

■ Although there is a paucity of cases involving this particular question [6] and even though a wharf owner might, under a number of conceivable circumstances, be held liable if he had knowledge that a vessel tied to its wharf was in some way "obstructing navigation" by creating an undisclosed hazard to navigation and in the face of such knowledge did nothing to correct the situation, there is no positive duty on the part of a wharf owner to continuously police the

---

of these or any other controverted fact issues concerning the action against Elliot which is still pending in the District Court. (See note 3, *infra.*) In any event, on summary judgment such controversies if legally significant are for a trier of fact.

3. Appellant's action against Captain Darryl Elliot, who is not a party to this appeal, is still pending before the District Court. But this judgment dismissing the wharf owner is appealable since the Court certified no just reason for delay, F.R.Civ.P. 54(b), and as a case specified to be in admiralty, F.R.Civ.P. 9(h), even if otherwise interlocutory, it is appealable as determining liabilities of the parties. 28 U.S.C.A. § 1292(a)(3).

4. We are not entirely sure as to whether or not this particular argument is directed toward a theory of vicarious liability under master-servant or principal-agent or rather is directed toward the theory discussed *infra* concerning the negligence of the Robinsons themselves in their roles as riparian wharf owners. In any event, as it is uncontroverted that the Robinsons' wharf was free to all area fishermen who wished to use it and since Elliot's only other contact with the Robinsons other than his use of their

wharf was his periodic, regular sale of his catches to them, we conclude that a master-servant, principal-agent relationship upon which to base recovery under this theory is here lacking.

5. We find Appellant's further argument in this regard that the Captain Pip, having been continuously tied up to the Robinson wharf for some eight months, had become an extension of the wharf to be completely without merit and here not worthy of discussion.

6. But see Reichert Towing Line, Inc. v. Burns Bros. Coal Co., E.D.N.Y., 1953, 1953 A.M.C. 1456, which involved an action against a wharf owner arising from the collision of a vessel with a barge which had been improperly tied to its wharf by a third party. The Court held that even though the wharf owner had knowledge that such a dangerous condition existed since its watchman had observed the manner in which the barge had been tied to the wharf, the time which elapsed between the improper tying and the collision—some twenty minutes—was so short as not to afford the wharf owner an opportunity to correct the situation. The Court concluded that the wharf owner should not be held liable.

conduct of vessels at his wharf against isolated negligent acts committed by the owners or crew members of the vessels moored at the dock. Cf. Reichert Towing Line Inc. v. Burns Bros. Coal Co., *supra.*

 Here, the facts—viewed through Bergeron tinted lenses—are insufficient to give rise to even an inference that the wharf·owner had knowledge that Elliot had lowered the boom outward over the bayou in such a way as to allow the wire cable to be a menace to other craft. For it is uncontroverted that the canning plant was closed on the day of the accident as it had been for sometime previously due to the lull in the fishing season. As a consequence, it is uncontroverted that neither the Robinsons nor any of their agents or employees were anywhere near the wharf on the day of the accident.

In attempting to overcome what by now has become an insurmountable obstacle, Appellant relies upon his statement given on deposition to the effect that it was a "common practice" for shrimpers to periodically lower trawling booms in order to perform needed maintenance. As this statement was used by defense counsel in arguments before the District Court in an attempt to establish contributory negligence on the part of Appellant, he here contends that the Robinsons should also be bound by it.

Rejecting this argument, we briefly point out that although it might—the word is might—have been a common practice for shrimpers to lower their trawling booms, there is nothing in the record before us which raises a question of fact that in so doing the undisclosed wire cable would be handled in such a way as to create an undisclosed hazard to others or that it was "common practice" to swing the booms out farther than reasonably necessary to thereby bring about an unreasonable menace to naviga-

tion no matter how obvious to vessels navigating nearby. Granted that on summary judgment the Judge had to credit the "common practice," there was no evidence that this wharf owner, who had no actual knowledge, had to anticipate that it would be carried out negligently. And there it ends.

Affirmed.[7]

---

7. The question of prepayment of costs or security therefore, 28 U.S.C.A. § 1916, 46 U.S.C.A. § 713, washes out by this disposition.

* Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al., 5 Cir., 1970, 431 F.2d 409.