**WALTER E. HELLER AND COMPANY,**
Plaintiff-Appellee,

v.

**O/S SONNY V., her engines, nets, tackle, apparel and furniture, In Rem, Defendant,**

**Vance Trawlers, Inc. and J. B. Vance, In Personam, Defendants-Appellants.**

No. 77–1217.

United States Court of Appeals, Fifth Circuit.

May 16, 1979.

Robert B. Benton, Jack D. Sanchez, Brownsville, Tex., for defendants-appellants.

Bennie E. Ray, Brownsville, Tex., for plaintiff-appellee.

Before WISDOM, COLEMAN and RONEY, Circuit Judges.

WISDOM, Circuit Judge:

Vance Trawlers, Inc., and J. B. Vance, defendants, appeal from judgments entered against them in an action on a promissory note and a preferred ship's mortgage on the O/S SONNY V. The plaintiff-appellee, Walter E. Heller and Company ("Heller"), foreclosed on the mortgage and purchased the SONNY V at an interlocutory judicial sale. The district court entered a summary judgment against J. B. Vance and a partial summary judgment against Vance Trawlers in the Company's deficiency suit on the promissory note, giving the defendants a credit in the amount of the purchase price at the judicial sale. The appellants protest that the trial court erred in measuring the offset by the sale price rather than by the fair market value of the ship. They also contend that the trial court erred in foreclosing trial on the issue whether the mortgage and note incorporated Texas usury law, that they were entitled to trial on the issue of allowable attorney's fees, and that there was no basis in the record for holding them liable for certain extension and late charges. We affirm the judgments in part and reverse them in part.

## I.

In 1969 Vance Trawlers, Inc. and J. B. Vance executed in favor of B. G. Wylie a negotiable promissory note in the amount of $104,340 for the purchase of the O/S SONNY V. The note was secured by a preferred ship's mortgage on the SONNY V, executed the same day between Wylie and Vance Trawlers, Inc. Wylie assigned both note and mortgage to Walter E. Heller and Company, the appellee.

The promissory note is an "add on interest" note. Only $73,000.00 was actually advanced for the purchase of the SONNY V. The difference between the actual advance and the face amount of the note represented capitalized pre-maturity interest. The mortgage stated that the pre-maturity interest rate was zero. Interest after maturity was to be at the "highest lawful rate in the state wherein the homeport of the vessel is situated" (Texas). The note further

provided that upon the necessity to resort to legal remedies for enforcement the holder would be entitled to "reasonable attorney fees (fifteen percent if not prohibited by law)". Both note and mortgage contained a clause, unmitigated by a savings clause, permitting the holder to accelerate all installments upon the nonpayment of any installment at its maturity.

The parties entered several extension agreements altering the payments schedule. Eventually the Vance interests became delinquent in their payments, and Heller filed an action in district court under the Preferred Ship's Mortgage Act, 46 U.S.C. § 911 et seq., seeking foreclosure of the mortgage and recovery on the note, as well as fifteen percent of the outstanding principal and interest as reasonable attorney fees. Vance Trawlers' primary defense was a counterclaim that Heller had breached an agreement to refinance the balloon payment of $56,735.08.

J. B. Vance contended that Heller and Vance Trawlers had reached a novation, thus releasing him from any further liability on the promissory note. Both Vance and Vance Trawlers raised the further defense that the note was usurious, and both challenged Heller's claim to fifteen percent attorney fees. In March 1976 the district court entered an order for interlocutory sale of the SONNY V. The plaintiff Heller purchased the vessel for $35,000, and the district court confirmed the sale.

In early 1977 the district court granted Heller summary judgment against Vance and partial summary judgment against Vance Trawlers, Inc. The court ruled that no claim of usury could be sustained, that Heller was entitled to fifteen percent attorney fees, and that defendant J. B. Vance was personally liable for any deficiency. The defendants were given a credit of $35,-000, the amount for which Heller purchased the vessel at the interlocutory sale. Vance's liability was fixed at $51,992.73 plus nine percent interest. The court granted Vance Trawlers leave to pursue its fraud and breach of contract counterclaim against Heller. Both defendants appeal.

## II.

We address first Heller's contention that the district court's Amended Judgment and Partial Summary Judgment order is not appealable. 28 U.S.C. § 1291 gives this Court jurisdiction of appeals from final decisions of the district courts. An order that does not determine all the rights and liabilities of all the parties to the litigation is not an appealable, final decision unless the district court, under Rule 54(b) of the Federal Rules of Civil Procedure, directs the entry of judgment and expressly determines that there is "no just reason for delay." E. g., Capuano v. Bridges, 5 Cir. 1973, 483 F.2d 57; Bailey v. Rowan Drilling Co., 5 Cir. 1971, 441 F.2d 57. See generally 10 C. Wright & A. Miller, Federal Practice and Procedure, §§ 2653–2660 (1973). The district court's order in this case, which did not adjudicate Vance Trawlers' counterclaim against Heller, is such an interlocutory order. Although the court directed the entry of the judgments against both defendants, it did not make an express determination of "no just reason for delay" as required by Rule 54(b). The order is therefore not a final decision appealable under section 1291.

Section 1291, however, is not the sole basis of appellate jurisdiction. Heller's suit against the Vance interests is brought under the Preferred Ship's Mortgage Act, 46 U.S.C. §§ 951, 954. Both the foreclosure and the deficiency actions were within the admiralty jurisdiction of the district court.[1]

1. Section 951 states:

Upon the default of any term or condition of the mortgage, such lien may be enforced by the mortgagee by suit in rem in admiralty. Original jurisdiction of all such suits is granted to the district courts of the United States exclusively.

Section 954 provides:

(a) Upon the default of any term or condition of a preferred mortgage upon a vessel, the mortgagee may, in addition to all other remedies granted by this chapter, bring suit in personam in admiralty in a district court of the United States against the mortgagor for the amount of the outstanding mortgage indebtedness secured by such vessel or any deficiency in the full payment thereof.

28 U.S.C. § 1292(a)(3) gives this Court jurisdiction of appeals from the district court's "[i]nterlocutory decrees . . . determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." Appeals lie from such decrees without the necessity for Rule 54(b) certification. *O'Donnell v. Latham*, 5 Cir. 1976, 525 F.2d 650 (1976); *Caradelis v. Refineria Panama, S. A.*, 5 Cir. 1967, 384 F.2d 589; 7B J. Moore, *Federal Practice* ¶ 1292 at JC–429 (2d ed. 1978). The term "interlocutory decrees" in section 1292(a)(3) is broadly interpreted. "In general, it may be said that whenever an order dismisses a claim for relief on the merits it is appealable under § 1292(a)(3)." 9 J. Moore, *Federal Practice* ¶ 110.19[3] at 210 (2d ed. 1975); *see, e. g., Bergeron v. Elliott*, 5 Cir. 1972, 466 F.2d 514; *Crews v. Arundel Corp.*, 5 Cir. 1967, 386 F.2d 528. The order granting summary judgment against J. B. Vance fully disposes of Heller's claims against that defendant. The partial summary judgment similarly determines Heller's entire claim against Vance Trawlers, Inc., leaving only the latter's counterclaim to be adjudicated. Thus, the district court's order is an interlocutory decree appealable under § 1292(a)(3).

### III.

The district court, in determining deficiency liability, gave the plaintiffs a credit or offset in the amount of the public sale price of the vessel. The plaintiffs contend that the district court erred in granting Heller summary judgment as to the amount of deficiency liability without affording them the opportunity to prove that the fair value of the O/S SONNY V exceeded the price paid by Heller as purchaser at the interlocutory sale.

█ In reviewing the district court's treatment of the offset issue, we must apply federal law. "The Ship Mortgage Act, when read together with the statutes delineating the judicial sale procedure in the federal courts forms a comprehensive procedure for the foreclosure of a preferred ship's mortgage, the sale of the vessel and any resulting deficiency adjudged against the debtor *in personam*." *J. Ray McDermott & Co., Inc. v. Vessel Morning Star*, 5 Cir. 1972, 457 F.2d 815, 818 (en banc). Questions concerning deficiency judgment and judicial sale procedures are therefore governed by federal law. *Id.* See also *Bollinger & Boyd Barge Serv., Inc. v. M/V Captain Claude Bass*, 5 Cir. 1978, 576 F.2d 595.

█ Generally, "the amount realized on sale is an automatic determination of the amount to be applied upon the debt and the mortgage debtor, apart from statutes, most of them depression-born, is entitled to recover the balance." G. Osborne, *Handbook on the Law of Mortgages* § 333 at 699 (2d ed. 1970) (footnote omitted). The judicial sale price, however, is not always conclusive. "Under the federal rule, a 'fair value' offset may be allowed under proper circumstances where the equity of the circumstances requires it." *United States v. Caprice*, 1974, D.N.J., 427 F.Supp. 1031, 1033. See also *Bollinger & Boyd Barge Serv., Inc. v. M/V Captain Claude Bass*, 5 Cir. 1978, 576 F.2d 595; *United States v. Wells*, 5 Cir. 1968, 403 F.2d 596, 598.

The fairness of the public sale price of a vessel is therefore left to the equitable discretion of the district court. *J. Ray McDermott & Co., Inc. v. The Vessel Morning Star*, 457 F.2d at 819. The reported federal case law provides little guidance as to the parameters of that discretion when a defendant in a deficiency action seeks a credit in excess of the judicial sale price. Mere inadequacy of price, it is often said, is not a sufficient basis for denying confirmation of a sale or for setting aside a sale in bankruptcy. *See generally* 4B *Collier on Bankruptcy* ¶ 70.98 (14th ed. 1978). A foreclosure sale may be set aside only if the inadequacy of the sales price is so gross as to shock the conscience. *E. g., United States v. Wells*, 5 Cir. 1968, 403 F.2d 596, 598; *Magnolia Springs Apts., Inc. v. United States*, 5 Cir. 1963, 323 F.2d 726. In the area of bankruptcy sales, the standard for

denying confirmation because of inadequacy of price is less stringent than for setting aside a sale, because denial of confirmation does not involve, as does the setting aside of a sale, the undoing of a completed transaction and the upsetting of the reasonable expectations of the purchaser. *See* 4B *Collier on Bankruptcy, supra*, ¶ 70.98 at 1187–1194.

In this case the appellants did not ask the district court to set aside the sale (although they did oppose confirmation of the sale). They asked only an upward adjustment of the offset because of the alleged inadequacy of the sale price to Heller. In such cases defendants should not have to show a "shocking" or "gross" inadequacy of the sales price to be entitled to prove a fair value offset. On the other hand, they should not be automatically entitled to an offset in the amount of the mortgaged property's fair value. Deficiency judgment suits should not be turned into valuation cases absent at least a preliminary showing of a probable significant disparity between the sales price of the property and its fair value. Without such a showing, to grant a fair value offset in cases under the Ship Mortgage Act would upset the Congressional design of just and speedy enforcement of mortgagees' rights.

■ Turning to the record, we find that the evidentiary matter placed before the district court was adequate to entitle the defendants to an offset measured by the fair value of the property. The vessel was sold in March 1976 for $35,000 to the plaintiff-appellee. That Heller, and not a third party, purchased the vessel at the interlocu-

tory sale should alone have triggered the need for scrutiny by the district court.[2] Defendant Vance submitted to the court an affidavit in opposition to the sale, attached to which was a copy of a report by Dierlam & Dierlam, a marine consulting firm, appraising the O/S SONNY V at the market value of $118,000 as of July 1975. In opposing Heller's motion for summary judgment, furthermore, both defendants alleged the Heller resold the SONNY V for $52,000, a price almost 50 percent greater than the judicial sale price. Given the substantial disparity between the sale price and the Dierlam & Dierlam appraisal, and between the sale price and the resale price, we think that the district court abused its discretion in not permitting the defendants to pursue an offset measured by the fair value of the vessel as opposed to the foreclosure sale price.

The judgments, accordingly, must be set aside and the case remanded for trial on the issue of the fair market value of the SONNY V as of the time the interlocutory sale was confirmed. Because the district court confirmed the sale and Heller thereafter resold the ship at a price that was very possibly influenced by the price at which Heller purchased it, fairness demands that the amount of the resale price, $52,000, less the cost of any repairs that Heller might have made to the vessel, be the upper limit of the offset.[3]

## IV.

The appellants assert several additional challenges to the district court's grant of summary judgment.

---

2. In most American jurisdictions, the mortgagee may purchase at the foreclosure sale, G. Osborne, *Handbook on the Law of Mortgages* § 318 (2d ed. 1970), but the fairness of the transaction is subject to special scrutiny if the mortgagee purchases. *E. g., Southern Maryland Oil, Inc. v. Kaminetz*, 260 Md. 443, 272 A.2d 641 (1971). Indeed the dangers inherent in permitting the mortgagee to purchase at a foreclosure sale led the English to prohibit the practice. Turner, *English Mortgage of Land as a Security*, 20 Va.L.Rev. 729, 734 (1934).

3. We do not imply that the district court on remand is bound to find a fair market value in excess of the interlocutory sale price. In oral

argument the appellee alleged that the disparity between the judicial sale price of $35,000 and the alleged resale price of $52,000 was attributable to extensive repairs that the appellee made to the vessel before resale. We hold only that the court had before it sufficient evidence of a substantial disparity to justify fact-finding on the issue of value. Valuation is not an exact science, and the virtue of a well-conducted judicial sale is to avoid the necessity of embarking on a valuation hearing. If on remand the defendants fail to carry their burden of proving a fair value in excess of the sale price the district court should adopt the $35,000 sale price as the measure of the defendants' offset.

First, they urge that there remained triable issues of fact underlying their defense that the mortgage and promissory note were usurious under Texas law. The appellants acknowledge that under 46 U.S.C. § 926(d) "[a] Preferred Mortgage may bear such interest as is agreed by the parties thereto." They contend, however, that the parties to this ship mortgage agreed to incorporate Texas law limiting the rate of interest chargeable on the note, or at least that there is a genuine factual dispute whether the contract incorporates Texas law. J. B. Vance argues, in the alternative, that as to Heller's claim against him, Texas law, including the law of usury, governs of its own force.

■ Assuming that the parties were free to incorporate state usury laws in their contract, there is no genuine dispute over whether the parties did so in this case. The mortgage stated no pre-maturity interest rate whatsoever. The note stated the pre-maturity interest rate at zero percent. There was no reference in the pre-maturity interest rate provision to state usury laws or any other state laws. Indeed, the appellants' case did not rest on the terms of the pre-maturity interest rate provision at all, but on other provisions of the contract. They point (1) to the post-maturity interest provision, which limits interest after maturity to the highest lawful rate in the vessel's homeport state;[4] (2) to the attorney fees provision, which provides that the mortgagor is entitled to attorney fees in the amount of fifteen percent of outstanding principal and interest if not prohibited by law; and (3) to the provision waiving all exemptions and homestead laws as evidencing an intent to incorporate state law as to any contract rate that state law could conceivably operate to limit. The answer to this argument is that the pre-maturity interest provision is not ambiguous. It states no limitations external to the contract. Rather than create an ambiguity with respect to the prematurity interest term, the parties' express references to state law in those provisions in which they wished to oust or invoke state law limitations reinforce the conclusion that the parties' silence in the pre-maturity interest term on the matter of state usury laws had been considered. The appellants showed the district court no evidence justifying trial on the issue whether the contract incorporated Texas usury law.

We reject also Vance's argument that Texas usury law governs the contract of its own force. Vance's theory is that the deficiency judgment jurisdictional statute, 46 U.S.C. § 954, does not extend to Heller's deficiency claim against him, and that the claim on the note is therefore governed by state law. He points out that section 954, in terms, extends jurisdiction only to deficiency suits "against the mortgagor."[5] Vance, it is undisputed, was not a party to the mortgage, although he was a co-maker of the promissory note. We find it unnecessary to determine whether the statute grants federal courts jurisdiction of deficiency claims against parties to promissory notes secured by preferred ship mortgages who were not themselves mortgagors.[6] Section 926(d) of the statute expressly gives the parties complete freedom with respect to the interest rates that a preferred mortgage may bear. Because application of state usury laws, absent incorporation of that law into the contract, would contravene the freedom-of-contract principle of section 926, usury laws have no application

4. The defendants usury defense went not to post-maturity interest, but to the capitalized pre-maturity interest. The district court allowed ten percent post-maturity interest, the highest rate lawful under Texas law, in accord with the parties' contract.

5. See note 1 supra.

6. Vance's point is not intended to be a challenge to the district court's jurisdiction of the claim against him. Heller's complaint in this action sufficiently alleged the existence of diversity jurisdiction as to that claim. The claim, moreover, was pendent to the court's admiralty jurisdiction of the claims against Vance Trawlers. See, e. g., Mobil Oil Corp. v. Kelley, 5 Cir. 1974, 493 F.2d 784, 789; see also, Aldinger v. Howard, 1976, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276.

in actions involving a preferred ship's mortgage. *Nat G. Harrison Overseas Corp. v. American Barge Sun Coaster,* 5 Cir. 1973, 475 F.2d 504. *See J. Ray McDermott & Co., Inc. v. The Vessel Morning Star, supra.* The promissory note and the mortgage are inseparable halves of the same contract. State usury laws therefore have no application to a section 954 suit on a promissory note secured by a preferred ship mortgage.

The appellants next argue that the district court lacked sufficient grounds for holding them liable for certain extension and late charges. They argue that neither the mortgage nor the note authorized those charges, and that therefore the court had no basis for including those charges in the judgment. The court ruled that the defendants were liable for the unpaid principal due under the parties' extension agreement as of February 28, 1974, less the $35,000 paid by Heller at the interlocutory sale, plus post-maturity interest and fifteen percent of the unpaid principal as attorneys fees. The unpaid principal, the court adjudged, was $60,968.91. Although the court did not break down the principal, it appears from Heller's original complaint that the sum included $9,136.08 in extension charges, as acknowledged by an Extension Agreement of December 30, 1971.

■ The existence of that contract was alleged in the original complaint, and a copy was attached to the complaint. The extension agreement was signed by J. B. Vance for Vance Trawlers, Inc. in his capacity as president of the company. But unlike the original promissory note, the December 31 extension agreement was not signed by Vance in his individual capacity as well. The record was devoid of evidence that Vance was individually liable for the $9,136.08 in extension and late charges. Summary judgment on the issue of Vance's liability for the extension charges must therefore be reversed. There was ample basis, however, for the judgment against Vance Trawlers, Inc. on the extension charges issue. The contract evidencing Vance Trawlers' liability for extension charges was before the court when it ruled on Heller's summary judgment motion. Vance Trawlers submitted no evidence casting doubt on the validity or enforceability of that contract and thus failed to carry its Rule 56(e) burden of showing, by affidavits or otherwise, that there was a genuine issue of fact relating to the company's liability for extension charges.

■ The appellants also challenge the district court's award to Heller of fifteen percent of the outstanding principal as attorney fees. Under the terms of the note, Heller was entitled to "reasonable attorney fees (fifteen percent if not prohibited by law)". It is urged that the case should have proceeded to trial to determine whether fifteen percent of the outstanding principal (a sum of $9,145.34) was a reasonable attorney's fee in the circumstances. It is contended that under Texas law an attorney's fees clause entitling the holder to a flat percentage fee is in the nature of a contract to indemnify; if the obligor contests the holder's right to the stipulated fee recovery will be limited to an amount that is reasonable. *E. g., Kuper v. Schmidt,* 1960, 161 Tex. 189, 338 S.W.2d 948.

The parties have not addressed themselves to whether the issue of the attorney's fee stipulation is governed by state or federal law. In the *McDermott* case we noted that "state law may occasionally be utilized to fill the gaps in an incomplete and less than perfect maritime system". 457 F.2d at 818. The Ship Mortgage Act itself says nothing about the recovery of attorney's fees or the validity of contractual stipulations of attorney's fees. Section 926(d) gives the parties to a preferred ship's mortgage complete freedom of contract respecting interest rates, but it is doubtful that this section expresses a general congressional policy of freedom of contract. Nor have we found a case expressing a federal policy on the enforceability of attorney's fees stipulations.

In the absence of a federal rule, we see no reason not to apply state law, provided that application of state law would not frustrate the policies of the Act. Application of state law in this case in no way

conflicts with the Act. Granted that the Act is designed to bring uniformity to the area of ship mortgages in the interests of aiding and encouraging financing of the American merchant marine, the introduction of state law on the issue of attorney's fees stipulations does little to disturb that uniformity and imports little or no uncertainty concerning the rights of mortgagees and their assignees. The Texas rule on attorney's fees stipulations is the majority American rule. *See, e. g., Philmon v. Mid-State Homes,* 1968, 245 Ark. 680, 434 S.W.2d 84; *Martin v. Gibson,* 1941, Cal.Dist. Ct.App., 48 Cal.App.2d 449, 119 P.2d 1012; *Heimer v. Albion Realty & Mtg., Inc.,* 1974, Fla.Dist.Ct.App., 300 So.2d 31; *Eastgate Enterprises, Inc. v. Bank & Trust Co. of Old York Road,* 1975, Pa.Super.Ct., 236 Pa.Super. 503, 345 A.2d 279. *See generally,* 59 C.J.S. Mortgages § 812 (1949). Application of that rule need not frustrate a mortgagee's wish to impose a penalty, liquidate the costs of enforcement, or otherwise protect himself from the uncertainties of enforcement, for section 926(d) enables him to exact extra charges in the form of added pre-maturity or post-maturity interest.

The note and mortgage having been executed in Texas, and the parties having indicated elsewhere in the contract that Texas law should apply if indeed state law applies, we hold that the Texas rule governs.

We disagree with the appellants, however, that application of the Texas rule requires reversal of the summary judgment. Under that rule the holder of a promissory note is prima facie entitled to recover the attorney's fees stipulated in the contract upon a showing that the contingency that makes such fees payable has occurred. *Kuper v. Schmidt, supra. See also Highlands Cable Television v. Wong,* 1977, Tex.Civ. App., 547 S.W.2d 324, 327; *Capps v. Huff,* 1968, Tex.Civ.App., 427 S.W.2d 121, 122. Thus, if the obligor comes forward with no evidence showing that the stipulated fee award is unreasonable, the holder may recover the stipulated fee without introducing evidence of reasonableness at all. *Highlands Cable Television v. Wong, supra.* The plaintiff in this case made the showing that

the contingency—resort to a civil action to enforce his rights—had occurred. Had he made that showing at trial the defendants could not have stood on a mere denial of the reasonableness of the stipulated fees without suffering a directed verdict.

So too were they obligated, once the plaintiff moved for summary judgment and proved the occurrence of the contingency, to produce evidence for summary judgment purposes contesting the reasonableness of the fifteen percent fees. Under Rule 56(e), "if the movant makes out a prima facie case that would entitle him to a directed verdict if uncontroverted at trial, summary judgment will be granted unless the party opposing the motion offers some competent evidence that could be presented at trial showing that there is a genuine issue as to a material fact." 10 C. Wright & A. Miller, *Federal Practice and Procedure* § 2727, 536–37 (1973). *See, e. g., First Nat'l Bank v. Cities Service Co.,* 1968, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569; *Sweet v. Childs,* 5 Cir. 1975, 507 F.2d 675, 679; *Stansifer v. Chrysler Motors Corp.,* 9 Cir. 1973, 487 F.2d 59. The defendants here simply challenged the reasonableness of the fee, but did not attempt to produce competent evidence showing the existence of a genuine issue of fact. The mere denial of the reasonableness of the fees did not create a genuine issue, for Rule 56 does not permit a party having the burden of showing the need for trial to rest on his pleadings. *See Gossett v. Du-Ra-Kel Corp.,* 5 Cir. 1978, 569 F.2d 869, 872–73. The judgment with respect to attorney's fees is therefore affirmed.

■ We address, finally, J. B. Vance's contention that summary judgment as to him was improper because there remains unresolved the question whether Heller and Vance Trawlers reached a novation of their contract, in the form of an extension agreement, thereby discharging him from further liability. Vance apparently contends that he was a surety on the promissory note, and that an extension agreement entered into by Heller and Vance Trawlers, the principal

debtor, extinguished his liability. There was, however, no evidence or allegation that Vance signed the promissory note as a surety. Indeed he has consistently characterized his capacity as that of a co-maker. More importantly, Vance in his pleadings never set up discharge as an affirmative defense. Under Texas law, discharge is an affirmative defense. *Tomlin v. Ceres Corp.,* 5 Cir. 1975, 507 F.2d 642, 646–47, and must therefore be pleaded affirmatively. Rule 8(c), Fed.R.Civ.P.; 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1271 (1969). The issue was not before the district court, and the court's ruling as to Vance's liability cannot be disturbed on that ground.[7]

\*    \*    \*

The district court's judgments are affirmed in part and reversed in part. The case is remanded for further proceedings on the issues of the proper measure of the credit to which the defendants are entitled for the value of the O/S SONNY V and J. B. Vance's liability for extension and late charges. These issues remain, of course, in addition to Vance Trawlers' counterclaims against Heller.

AFFIRMED in Part; REVERSED in Part and REMANDED.

---

7. Vance has contended on appeal that he has been denied his right to jury trial of the claims against him. The issue is not properly before us, because although Vance made a timely demand for jury trial the litigation in the district court did not reach the point at which it became necessary for the court to rule on Vance's demand. We feel, however, that the interests of judicial efficiency would be served by addressing the issue at this time.

Vance correctly argues that he would have a right to jury trial if the claims against him could have been independently brought within federal jurisdiction on the "law side", provided the plaintiff has not identified the claim as an admiralty or maritime claim, as permitted by Fed.R.Civ.P. Rule 9(h). 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2316 at 76 (1971). And it is true that Heller's claim against Vance could independently have been brought within the federal diversity jurisdiction, and that Heller filed no Rule 9(h) identification. Foreclosure actions, however, have always been deemed equitable in nature and may therefore be tried without a jury. The deficiency determination is an inseparable incident to the foreclosure action and is therefore left to the court, and not to a jury. *Rozelle v. Connecticut General Life Ins. Co.,* 10 Cir. 1972, 471 F.2d 29, 30–31, *cert. denied,* 1973, 411 U.S. 921, 93 S.Ct. 1549, 36 L.Ed.2d 314.