33 F.3d 420
 1995 A.M.C. 635
 EVERGREEN INTERNATIONAL (USA) CORPORATION, Plaintiff-Appellant,
v.
STANDARD WAREHOUSE, a Corporation; Standard Corporation, a
Corporation; Albright & Wilson Americas, a
Corporation, Defendants-Appellees,
and
Metropolitan Stevedore Company, a Corporation, Defendant.
 No. 93-1990.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 15, 1994.
Decided Sept. 1, 1994.
 
 ARGUED: Benjamin Allston Moore, Jr., Buist, Moore, Smythe & McGee, P.A., Charleston, SC, for appellant. Andrew Steven Halio, Halio & Halio, Charleston, SC, for appellees Standard Corp. and Standard Warehouse; William Jefferson Leath, Jr., Young, Clement, Rivers & Tisdale, Charleston, SC, for appellee Albright & Wilson Americas. ON BRIEF: Douglas M. Muller, Buist, Moore, Smythe & McGee, P.A., Charleston, SC, for appellant. Stephen P. Groves, Young, Clement, Rivers & Tisdale, Charleston, SC; David Scott Porter, Fisher & Porter, Long Beach, CA, for appellee Albright & Wilson Americas.
 Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and HARVEY, Senior United States District Judge for the District of Maryland, sitting by designation.
 Dismissed by published opinion. Chief Judge ERVIN wrote the opinion, in which Judge NIEMEYER and Senior Judge ALEXANDER HARVEY, II joined.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 Evergreen International (Evergreen) brought suit in the United States District Court in Charleston, South Carolina, against Albright & Wilson Americas, Standard Warehouse, Standard Corporation, and Metropolitan Stevedore Co. to recover costs incurred as a result of a chemical leak and the resultant disruption of business in the Port of Los Angeles, California. The suit is an admiralty and maritime claim under Fed.R.Civ.P. 9(h). Jurisdiction in the district court is proper under 28 U.S.C. Sec. 1331.
 
 
 2
 Evergreen agreed to dismiss the claim against Metropolitan Stevedore Co. after that company filed a motion to dismiss for lack of personal jurisdiction. Following motions for summary judgment by the three remaining defendants, the district court granted summary judgment in favor of Standard Corp. and Standard Warehouse, but denied the motion of Albright & Wilson Americas on an estoppel theory. Based on 28 U.S.C. Sec. 1292(a)(3), Evergreen then brought this interlocutory appeal relating to the district court's grant of summary judgment for Standard Warehouse and Standard Corp. At oral argument, this court sua sponte raised the question of its jurisdiction to hear Evergreen's appeal at this time, and it invited counsel for both sides to provide post-argument letters addressing this matter in greater depth; for the reasons set forth below, we now dismiss this appeal as untimely.
 
 I.
 
 3
 To understand the procedural posture of the case that leads us to dismiss this appeal, it is helpful to begin with a general statement of the facts underlying this dispute. Albright & Wilson owned a number of drums of trimethyl phosphite (TMP), located in South Carolina, that it apparently desired to export overseas. It therefore entered into a contract with Evergreen to act as the shipper. Standard Corporation of Columbia, SC loaded the drums of TMP into large shipping containers owned by Evergreen. The TMP was then transported across the country to Los Angeles by rail. In Los Angeles, Metropolitan Stevedore loaded the containers onto the Evergreen shipping vessel.
 
 
 4
 During the loading process, two of the drums of TMP "holed," releasing highly pungent but non-toxic fumes into the air on February 21, 1990. Authorities in Los Angeles did not know the cause or toxicity of the material involved, and suspected that the leak was propane. They thus closed the port of Los Angeles for over a day.
 
 
 5
 As a result of the spill, numerous claims were made by persons and entities allegedly affected by the spill and related port closure. These claims were directed to both the plaintiff Evergreen and the defendants. To facilitate resolution of the third party claims, the parties agreed to mount a coordinated defense that would not at that time raise any issues of indemnity between them, leaving those matters to be resolved later. Instead, the third party claims were equitably divided among counsel for the parties to handle, and all of those claims were settled.
 
 
 6
 Eventually, Evergreen and the defendants entered into an arbitration agreement, the scope of which is the substance of the case below. In this contract, the parties agreed that arbitration would be the proper forum to resolve either all or some (that is the question of the case) of their disputes. Whatever the scope of the agreement, it is clear that it required all claims coming under its aegis to be submitted to arbitration no later than August 30, 1992. By that date, none of the parties had made any claims or initiated the arbitration procedure.
 
 
 7
 The focus of the controversy is over a divergence between the language of one paragraph of the recitals and the language of the operative clauses. The relevant recital paragraph of the arbitration agreement reads:
 
 
 8
 E. The parties hereto recognize that it would be more economical to resolve among themselves in a single proceeding (1) their respective rights, if any, against each other for losses and damages each party hereto may have directly suffered as a result of the TMP leak, and (2) their respective rights, if any, against each other for indemnity or for apportionment of liability for any claims brought by the persons, firm, entities, and governmental authorities described in paragraph B above. [Paragraph B refers to "persons, firms, entities, and governmental authorities" who "have made claims against the parties hereto."]
 
 
 9
 (Emphasis supplied.) It seems clear that this recital indicates an intention by the parties to submit both third party and second party claims to arbitration. If this clause were given effect, the current suit, which is for negligence and for indemnification, would be barred.
 
 
 10
 The operative language of the contract comes in two paragraphs:
 
 
 11
 1. All claims between and among the parties hereto for indemnity or apportionment of liability for any claims brought by persons, firms, entities, and governmental authorities arising out of the TMP leak shall be submitted to arbitration in Los Angeles, California....[T]he matter shall be submitted to arbitration at a time mutually agreed upon by the parties, but not later than August 30, 1992, unless an extension is agreed upon in writing by all parties hereto.
 
 
 12
 2. In consideration of the covenants and promises herein, the parties hereto agree that they shall not file any cross-complaints against any of the other parties hereto in any actions or suits brought by any other persons, firms, entities, and governmental authorities arising out of the TMP leak.
 
 
 13
 (Emphasis supplied.) The center of the dispute is on the scope of the language in paragraphs 1 and 2 of the agreement. Evergreen argued below, and raised the argument on appeal before this court, that the fact that the language of the agreement tracked the language of only one of the two enumerated provisions in the recital indicates that the operative provisions of the contract only cover third party claims for indemnification, not second party claims for negligence or liability. In contrast, the defendants argued that the language of the agreement unequivocally covered all claims of whatever sort between and among the parties.
 
 
 14
 After the cutoff date for submitting claims to arbitration, Evergreen apparently learned that the cost to it of the accident would be greater than it had anticipated. It raised the issue of compensation with the other parties to the agreement, but they rebuffed Evergreen, asserting that the arbitration agreement covered all claims and that the deadline had passed. On February 19, 1993, Evergreen filed this suit, which seeks compensation for the injury it sustained as a result of the spill, which it states was caused by the alleged negligence of one or all of the defendants. Evergreen also seeks indemnification for defending and settling the third party claims. Metropolitan Stevedore eventually was dismissed from the suit for personal jurisdiction reasons, and that case was refiled in the Central District of California. The remaining defendants moved for summary judgment. The basis for the motion was the joint defense agreement, which they contended required arbitration not only for indemnification and apportionment on the third party claims, but covered direct claims among the parties against each other as well.
 
 
 15
 The district court granted the motion for summary judgment in favor of Standard Warehouse and Standard Corporation on the reasoning that the contract was clear and that it covered both third party as well as second party claims. It denied Albright & Wilson's motion because it found that certain conduct by its attorneys' estopped it from relying on the agreement. It is from this point that the parties appeal. While the claims against Standard Corporation and Standard Warehouse are fully resolved, the claim against Albright & Wilson survives, and the appeal is thus interlocutory.
 
 II.
 
 16
 The power of the federal courts of appeals to hear appeals from the district courts is within the control of the legislative branch. In 28 U.S.C. Sec. 1291, Congress directed that the courts of appeals "shall have jurisdiction of appeals from all final decisions of the district courts of the United States." (Emphasis supplied.) The finality requirement of Sec. 1291 is an important component of the judicial structure, for, as a general matter, it prevents the entanglement of the district and appellate courts in each other's adjudications in an unruly and ultimately inefficient way. In addition, particularly given the complexity and protracted nature of some lawsuits, and the numerosity of issues that often can only be addressed by district courts seriatim, the finality requirement helps to prevent the appellate courts from issuing opinions that would tend, in the end, to turn out to be advisory in nature. Given our limited roles as judges, and our strong desire to promote the efficient administration of justice, we take the finality rule of Sec. 1291 seriously.
 
 
 17
 Nevertheless, Congress recognized that there are some circumstances in which a blind adherence to finality as the ultimate arbiter of efficiency or the proper administration of justice would be misplaced. In these circumstances, the facts of particular types of cases coming under the exceptions are such that an appeal prior to the final disposition of the case in the district court is appropriate, and the dangers and inefficiencies inherent in interlocutory appeals are outweighed by the benefits to be gained by an immediate consideration of the disposition of the particular matter in the court below. Thus, Congress enacted 28 U.S.C. Sec. 1292, an exception to Sec. 1291, which provides for interlocutory appeals in a specified group of cases. Subsection 1292(a)(3) vests jurisdiction in the courts of appeals to hear
 
 
 18
 [i]nterlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed. 28 U.S.C. Sec. 1292(a)(3). It is upon this provision that appeal in the instant case is premised.
 
 
 19
 As noted, Sec. 1292(a)(3) is an exception to the general rule of finality stated in Sec. 1291, and as such, it is to be construed narrowly. City of Fort Madison v. EMERALD LADY, 990 F.2d 1086, 1088 (8th Cir.1993); Seattle-First Nat'l Bank v. Bluewater Partnership, 772 F.2d 565, 568 (9th Cir.1985); Hollywood Marine, Inc. v. M/V ARTIE JAMES, 755 F.2d 414, 416 (5th Cir.1985). The provision was enacted in 1926, well before the merger of the rules of law and admiralty, and with a specific set of circumstances animating Congress' concern to provide an interlocutory appeal.
 
 
 20
 In admiralty, trials were traditionally bifurcated. First, there would be a trial before the court on the issue of liability. If there was a finding of liability, there would then be a separate hearing before a special master to ascertain damages. These damages hearings were often both lengthy and costly. Congress intended 28 U.S.C. Sec. 1292(a)(3) to permit parties to appeal the finding of liability on the merits, before undergoing the long, burdensome, and perhaps unnecessary damages proceeding. Section 1292(a)(3) was not intended to clutter the federal docket with interlocutory odds and ends.
 
 
 21
 City of Fort Madison, 990 F.2d at 1089 (internal quotations and citations omitted). This understanding of the statute's purpose is universal. E.g., Burgbacher v. University of Pittsburgh, 860 F.2d 87, 88 (3d Cir.1988); Seattle-First Nat'l Bank, 772 F.2d at 568; The SS TROPIC BREEZE, 456 F.2d 137, 139 (1st Cir.1972); The Maria, 67 F.2d 571 (2d Cir.1933); 9 James Wm. Moore et al., Moore's Federal Practice p 110.19 (2d ed.1994); 16 Charles Alan Wright et al., Federal Practice and Procedure Sec. 3927 (1977). Indeed, this circuit indicated that this was its understanding of the purpose of the statute in Medomsley Steam Shipping Co. v. Elizabeth River Terminals, Inc., 317 F.2d 741 (4th Cir.1963), where, quoting from the Second Circuit's opinion in The Maria, supra, it stated:
 
 
 22
 That statute [now 28 U.S.C. Sec. 1292(a)(3) ] was primarily intended to avoid the expense and delay of a reference to compute damages, since it is always possible that the libelant may later turn out to have no right to recover at all.
 
 
 23
 Medomsley Steam Shipping Co., 317 F.2d at 742.
 
 
 24
 Over time, however, this narrow scenario that justified the initial enactment of the provision has fallen into desuetude, while parties have attempted to use the provision to support interlocutory appeals in many situations that do not supply the same logical justification for an exception to the finality rule. While in many instances courts have read the provision narrowly and declined to find jurisdiction, in many other instances courts have read the statute more broadly and found jurisdiction in situations far different from that giving rise to the provision in the first place.[1]
 
 
 25
 This circuit's treatment of the applicability of Sec. 1292(a)(3) outside the originally animating procedural posture has been fairly consistent and restrained. In Miskiewicz v. Goodman, 341 F.2d 828 (4th Cir.1965), this court dismissed an interlocutory appeal by a cross-libelant on the grounds that the statute did not provide jurisdiction. While the court did not provide a guiding rule concerning the scope of 28 U.S.C. Sec. 1292(a)(3), it did canvass the decided cases and their views, noting in particular those cases that restrict appeal under that section to "situations in admiralty cases where the liability issue has been finally determined, leaving open only the question of damages." Id. at 831. More analogous to the present case, in Medomsley Steam Shipping Co. v. Elizabeth River Terminals, Inc., 317 F.2d 741 (4th Cir.1963), Medomsley filed a libel against Elizabeth River Terminals alleging a right of indemnification upon a theory of implied warranty. The district court dismissed the suit under that theory but allowed Medomsley the right to amend its suit to sound in negligence. Medomsley appealed instead, and this court held that it lacked jurisdiction to review the interlocutory appeal. Id. at 742-43.
 
 
 26
 While the treatment of this provision over time has varied greatly, and there appears to be little in the way of a consensus view among the courts concerning its current scope, we believe that the better course is to hold the exception to hew closely to the procedural posture that justified its inception and consequently dismiss this appeal. As one treatise has noted,
 
 
 27
 there is a strong argument that appeals should not be allowed merely because an admiralty court has determined, on the merits, some of the claims between all the parties, or all of the claims between some of the parties.
 
 
 28
 16 Charles Alan Wright et al., Federal Practice and Procedure Sec. 3927, at 120 (1977). As noted, the appeal is from a grant of summary judgment to two of three defendants in the instant case, which involves a pure question of general contract interpretation; while a suit in admiralty under Fed.R.Civ.P. 9(h), there is nothing about the matter on appeal, or the case as a whole, that gives it a distinctly maritime air. Indeed, except for the fact that it falls within the "admiralty" docket, there is nothing about it that makes it a candidate for special treatment under Sec. 1292(a)(3).
 
 
 29
 We believe that the better course, given this ambiguity as to the statute's scope, is to construe this exceptive statute narrowly, and thus limit the statute's special treatment to the special circumstances that justified its inception. This also has the beneficial effect of moving admiralty practice closer to the mainstream of civil litigation, an evolution that has progressed slowly for a number of years. For these reasons, we dismiss the appeal and await its ripening to address the merits of the question pressed on us. We sympathize with the appellant, who argues that it makes little sense from the point of judicial economy to dismiss the appeal, the court already having heard the case on the merits. Nevertheless, while our treatment of this case may require us to bear short-term inefficiency, the proper development of the law over the long term requires such immediate sacrifices. Cf. Digital Equip. Corp. v. Desktop Direct, Inc., --- U.S. ----, ----, 114 S.Ct. 1992, 1996, 128 L.Ed.2d 842, 849 (1994) (admonishing that in considering whether certain appeals are to be allowed under the collateral order doctrine, "the issue of appealability under Sec. 1291 is to be determined for the entire category to which a claim belongs, without regard to the chance that the litigation at hand might be speeded, or a particular injustice averted" (quotation and citation omitted)).
 
 DISMISSED.[2]
 
 
 [1]
 Cases in which the appellate courts have dismissed appeals based on a narrow reading of 28 U.S.C. Sec. 1292(a)(3) include City of Ft. Madison v. EMERALD LADY, supra; Burgbacher v. University of Pittsburgh, supra; Seattle-First Nat'l Bank v. Bluewater Partnership, supra; Hollywood Marine v. M/V ARTIE JAMES, supra; Seahorse Boat & Barge Corp. v. Jacksonville Shipyards, Inc., 617 F.2d 396 (5th Cir.1980); Austracan, (U.S.A.) Inc. v. M/V LEMONCORE, 500 F.2d 237 (5th Cir.1974); The Maria, supra. Cases in which the appellate courts have held jurisdiction proper for the appeal although the facts differed from those of the original justification for the appeal include All Alaskan Seafoods, Inc. v. M/V Sea Producer, 882 F.2d 425 (9th Cir.1989); Dunham v. M/V Marine Chemist, 812 F.2d 212, 214 n. 2 (5th Cir.1987); Nichols v. Barwick, 792 F.2d 1520 (11th Cir.1986); O'Donnell v. Latham, 525 F.2d 650 (5th Cir.1976); Doyle v. Bethlehem Steel Corp., 504 F.2d 911 (5th Cir.1974); Bergeron v. Elliot, 466 F.2d 514, 516 n. 3 (5th Cir.1972); Isbrandtsen Tankers, Inc. v. President of India, 446 F.2d 1198 (2d Cir.), cert. denied, 404 U.S. 985, 92 S.Ct. 452, 30 L.Ed.2d 369 (1971). As the careful eye will note, some circuits appear in both lists (neither of which is exhaustive), and these circuits have addressed this matter and developed fairly detailed rules to explain the distinctions between the various procedural postures presented and the applicability of Sec. 1292(a)(3) to each
 
 
 [2]
 Since we recognize that both parties believed jurisdiction to lie for this appeal, and we understand that the circuits have not provided helpful guidance in this area over time, we think it appropriate that each side bear its own costs