Frank ·A. O'DONNELL,
Plaintiff-Appellant,

v.

Parnell E. LATHAM, d/b/a Bud's Boat
Rental, et al.,
Defendants-Appellees-Appellants,

v.

GLACIER GENERAL ASSURANCE
CO. et al., Defendants-Appellees.

No. 74–3029.

United States Court of Appeals,
Fifth Circuit.

Jan. 5, 1976.

---

Eldon E. Fallon, J. Robert Ates, New Orleans, La., for plaintiff-appellant.

Darryl W. Burbrig, Sr., Buras, La., for defendants-appellees-appellants.

Clarence A. Frost, New Orleans, La., for Lloyds' Underwriters.

James G. Burke, Jr., Lawrence E. Abbott, New Orleans, La., for Glacier Gen. Assurance Co.

Before WISDOM, CLARK and RONEY, Circuit Judges.

CLARK, Circuit Judge:

Frank A. O'Donnell and several friends arranged to rent the CHARLES H, a 38-foot motor vessel of 19 gross tons, from Parnell E. Latham, doing business as Bud's Boat Rental, for a fishing trip. Latham agreed to leave the unmanned CHARLES H tied up to the dock, fueled and ready for an early morning pickup by the fishing party. The CHARLES H was to be used during the day and returned in the evening. The rental charge was 85 dollars plus the value of fuel consumed. The fishing party was to furnish its own fishing supplies, provisions and operating crew. While a member of the fishing party was maneuvering the vessel at an offshore oil rig, O'Donnell's arm was crushed. That injury gives rise to the instant claim.

O'Donnell sued Latham and his insurers, Glacier General Assurance Company (Glacier), and Underwriters at Lloyd's, London [Rowland Frank Brackenbury Berkeley] (Lloyd's), asserting both a theory of general negligence and of unseaworthiness. Latham filed a third-party action against O'Donnell's fishing companions. Glacier provided the primary

coverage for Latham. Lloyd's coverage was excess.

The insurers filed a motion to dismiss based on three contentions: (1) at the time of the accident the CHARLES H was beyond the territorial limits of the policy; (2) a demise or bareboat charter existed and the CHARLES H was not covered by the insurance policies while it was operated under a demise charter; and (3) that the vessel was being operated at the time of the accident in violation of Coast Guard regulations, contrary to the conditions of the excess policy. The district court declined to decide the first issue, but on the second and third grounds dismissed the action as to the insurers. Plaintiff and defendant Latham both appealed.

### I.

█ The insurers have moved to dismiss the appeal as lacking either finality or interlocutory appealability. Although dismissal of the action against the insurers is not a final order within the technical meaning of "final" in 28 U.S.C. § 1291, an examination of the congressional grant of appellate jurisdiction to this court reveals that finality and appealability are not perfectly congruent. Some interlocutory orders are appealable under 28 U.S.C. § 1292. The order in question here is such an order, since it was entered in an admiralty case and settles the issue of the insurers' liability as to both the plaintiff and the principal defendant.

█ 28 U.S.C. § 1292(a)(3) provides jurisdiction in this court of appeals from:

> interlocutory decrees of . . . district courts . . . determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

All the rights and liabilities of all the parties need not be determined before such an order is appealable. 7B J. Moore, Federal Practice § 1292 at JC–429 (2d ed. 1974); see Caradelis v. Refineria Panama, S. A., 384 F.2d 589 (5th Cir. 1967); *Gloria Steamship Co. v. Smith,* 376 F.2d 46 (5th Cir. 1967).

█ We are aware that the district court did not act under Fed.R.Civ.P. 54(b) to determine there was no just reason for delay and direct the entry of this judgment as final. However, the unification of civil and admiralty practice, see Fed.R.Civ.P. 9(h), does not affect the appealability of interlocutory orders in admiralty cases which are appealable by statute. Further, Rule 54(b) "does not supersede any statute controlling appellate jurisdiction." *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 438, 76 S.Ct. 895, 901, 100 L.Ed. 1297, 1307 (1956). *See also* 10 C. Wright & A. Miller, Federal Practice & Procedure § 2658 at 55–56 (1973). Finally, without deciding that it would be a *sine qua non* in a case like this, we note that the maritime character of the principal claim was clearly set forth in the complaint. *See* 9 J. Moore, Federal Practice ¶ 110.19(3) at 209 (2d ed. 1975). The motion to dismiss the appeal is denied.

### II.

Turning to the question of coverage and the substantive propriety of granting the insurers' motion to dismiss, we hold that the rental arrangement for the CHARLES H was a demise or bareboat charter, thus not within the insurance coverage, and affirm the dismissal of the claim as to the insurers.

Classification of the rental agreement in issue here cannot be performed with bright-line precision. It involves the imposition of principles formulated in the context of seagoing commerce onto the relatively recent phenomenon of private pleasure boat leasing. Some of the normal standards for determining whether a demise charter exists are inconclusive here. For example, both sides have sought to draw support from the phrase " 'man, victual', and supply the vessel." *See Stevens v. Seacoast Co.,* 414 F.2d 1032, 1035 (5th Cir. 1969); 46 U.S.C. § 186 (1970). O'Donnell and Latham argue that there is coverage because the

furnishing of fuel for the CHARLES H was such a "supply" as to take the agreement out of the demise charter category. On the other hand, the insurers point to the fact that the fishing party served as its own crew and brought its own food as indicating that the charter was bareboat.

■ We are satisfied, however, that the agreement in this case is properly construed to be a demise charter because it displays the dominant feature of such a charter: "possession and control of the vessel" was vested in the fishing party charterers. Latham exercised neither of these powers nor any supervision of the navigation of the vessel while the party was on the boat. Possession, command and navigation rested completely and exclusively in the members of the party. *See Guzman v. Pichirilo,* 369 U.S. 698, 699, 82 S.Ct. 1095, 1096, 8 L.Ed.2d 205, 206 (1962). The interest passed to the fishing party is readily comparable to that of a lessee of real property. *See Stevens v. Seacoast Co.,* 414 F.2d 1032, 1035–37 (5th Cir. 1969; *Bergan v. International Freighting Corp.,* 254 F.2d 231, 232 (2d Cir. 1958). The fact that the fishermen were to return the boat at the end of the day—thus limiting its use to a maximum period of time—is not a sufficient curtailment of possession and control to negate the demise. *See Reed v. S. S. Yaka,* 373 U.S. 410, 412, 83 S.Ct. 1349, 1352, 10 L.Ed.2d 448, 450–51 (1963); *Vitozi v. Balboa Shipping Co.,* 163 F.2d 286, 287 (1st Cir. 1947).

■ Finally, we note that in the context of determining the extent of insurance coverage none of the minor aberrations that could prevent the characterization of Latham's relinquishment of rights as "total" militate against this agreement being a bareboat charter. Denial of coverage for incidents of voyages under a bareboat charter is obviously a consequence of the insurers' justified insistence on knowing their risk. The policies were issued to Latham. By inclusion of the bareboat charter limitation, the insurers curtailed their liability for the boat's operation by eliminating coverage for hazards arising from unfettered use by unknown third parties. That the fishermen were to return the boat at dark and that Latham provided the fuel are without countervailing significance.

In view of our determination of this issue, we express no opinion on the validity or construction of the other policy provisions raised.

Affirmed.