United States Court of Appeals,

Fifth Circuit.

No. 95-20153.

UNDERWRITERS AT INTEREST ON COVER NOTE JHB92M10582079, Plaintiff-Appellee,

v.

NAUTRONIX, LTD., and Nautronix Inc., Defendants-Appellants.

April 10, 1996.

Appeal from the United States District Court for the Southern District of Texas.

Before JONES, STEWART and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

FACTS

Schahin Cury, a Brazilian company, owned the drill ship S.C. Lancer, which was chartered by another Brazilian company to conduct off-shore oil and gas well drilling. As part of the charter agreement, Schahin Cury was required to update the S.C. Lancer with a new dual computer dynamic positioning system ("DPS"). DPS is a complex device that holds the vessel in one place while the vessel does its drilling. Schahin Cury selected Nautronix, Ltd., an Australian corporation, to supply and install the DPS. Nautronix, Ltd. was to install the DPS, calibrate it, and train the officers and crew of the S.C. Lancer in the operation of the new system before starting drilling operations. Nautronix, Ltd. subcontracted portions of the DPS upgrade work to its wholly owned California

subsidiary, Nautronix Inc.[1], which in turn operated a sales office in Houston.

The chartering contract required Schahin Cury to have the S.C. Lancer fully operational at a specific date, but because of several delays, Schahin Cury ran up against the time-limit required by its chartering contract. Nautronix contends that Schahin Cury cut short necessary tests and sea trials of the new DPS, did not allow complete calibration of the system, and did not make its officers or crew available for training prior to commencing the contracted-for drilling operations. As a result, Nautronix contends that it was required to maintain its technicians on board to complete installation and adjustments to the DPS during the initial weeks of those drilling operations. Exactly what happened next on a dark and stormy night in June, 1993, is in contention.

During a drilling operation, Nautronix contends that the ship's captain panicked when the DPS indicators falsely showed that the vessel was drifting. It is Nautronix's contention that the ship's captain disregarded warnings by the Nautronix technician and warnings from his own DPS operator and chose to disengage the DPS and place the vessel in manual control. Schahin Cury argues that the DPS was not working properly, and that the captain pulled the ship about because a gale was causing it to roll dangerously, and that had he not done so, lives would have been in peril. In any case, as a result of the ship's movement, some 1,100 meters of well

---

[1]Nautronix, Ltd. and Nautronix, Inc. will be referred to collectively as "Nautronix".

casing that had been suspended beneath the ship sheared off, fell to the ocean floor, and had to be salvaged.

Schahin Cury and Rudgil, a wholly owned Panamanian subsidiary of Schahin Cury, made a claim of loss against its insurance policy, underwritten by Underwriters. According to Nautronix, Schahin Cury showed its loss to total $10,815,161.17. After the $100,000 deductible, Schahin Cury allegedly settled its claim for a total payment of $9,300,000, leaving it about $1,500,000 unreimbursed. Schahin Cury and Rudgil then brought suit against Nautronix for "the amount of its actual damages", alleging negligence, breach of various warranties, and negligent misrepresentation in connection with the manufacture, sale, and installation of the S.C. Lancer's DPS. The complaint was submitted by "attorneys for plaintiffs Schahin Cury Engenharia E Comércio, Ltda. and Rudgil, Inc."

Nautronix answered, denying Schahin Cury's claims and asserting defenses and counterclaims against Schahin Cury and Rudgil. In its counterclaims, Nautronix claimed that Schahin Cury had made various statements to the chartering company and to others in the offshore drilling industry, including both competitors of Nautronix and customers or potential customers of Nautronix. Nautronix contends that Schahin Cury's alleged statements defamed and disparaged Nautronix and the quality and reliability of its DPS system. Nautronix alleged that Schahin Cury made statements attributing the loss of the drillstring and attendant delay in drilling operations solely to defects in the Nautronix DPS and not the result of either Schahin Cury's or its captain's errors.

3

Specifically, Nautronix claimed commercial disparagement, damage to prospective economic advantage, slander, malicious prosecution, and abuse of process.

PROCEEDINGS BELOW

Schahin Cury filed a Rule 12(b) motion to dismiss Nautronix's counterclaims, stating that this lawsuit was "filed in the name of Schahin Cury without its authorization or consent and at the instance of attorneys acting solely on behalf of certain insurance underwriters." Schahin Cury claimed that it was not the real party in interest, that the District Court had no jurisdiction over it, and that service of Nautronix's counterclaims was insufficient. After a first amended complaint adding an additional defendant, a second motion to amend was filed by Underwriters on Friday, September 12, 1994. In their motion to amend, Underwriters stated that this is a subrogation suit, and that while Underwriters had the right to bring the suit in the name of Schahin Cury and Rudgil, the "continued exercise of that right would only serve to confuse the Court ... [s]ince Underwriters are the true parties in interest, Underwriters now seek to substitute their name for that of Schahin Cury and Rudgil." On the following Monday, September 19, 1994, the District Court approved and signed the order requested by Underwriters allowing the substitution of the name of Underwriters for Schahin Cury and Rudgil.

Nautronix filed a motion for reconsideration pointing out that by allowing the opposed second amendment to the complaint, the District Court had disregarded local rules allowing 20 days for a

4

party to respond to a motion, and that the amendment had *de facto* dismissed Nautronix's counterclaims without allowing Nautronix to be heard on the issue. That motion was denied and Nautronix then filed a motion to allow those claims as a third-party complaint. The court denied, in part, Nautronix's motion, noting that the still pending 12(b) motion by Schahin Cury to dismiss Nautronix's counterclaims was "moot" by reason of the earlier substitution of parties. The court *sua sponte* transferred this case to the Houston Division, where Nautronix's emergency motion for reconsideration of the ruling against its third-party motion was denied. Nautronix then filed this interlocutory appeal.

## JURISDICTION

This court has jurisdiction over appeals from "[i]nterlocutory decrees of such District Courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." 28 U.S.C. § 1292(a)(3). In an admiralty case, it is not necessary for the order appealed from to have determined all the rights and liabilities of all the parties before such an order is appealable under § 1292(a)(3). *O'Donnell v. Latham,* 525 F.2d 650, 652 (5th Cir.1976). However, Underwriters argues that we are without jurisdiction because the interlocutory order appealed from does not effectively determine any "rights or liabilities" of Nautronix. We disagree.

After having claims asserted against it by Schahin Cury and Rudgil, Nautronix was required to assert its claims, in the form of

5

counterclaims, against the opposing parties.[2]  Nautronix complied

with this requirement when they filed their counterclaims.

Fed.R.Civ.P. 41(a)(2) provides, in part:

If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court.

When the district court issued its order granting Underwriters

motion to amend the original complaint by substituting its name in

place of Schahin Cury and Rudgil as the party plaintiff, it made no

provision for Nautronix's counterclaims to remain pending for

---

[2]A counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."  Fed.R.Civ.P. 13(a).  The test for whether a claim is compulsory is:

(1) whether the issues of fact and law raised by the claim and counterclaim largely are the same;  (2) whether res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule;  (3) whether substantially the same evidence will support or refute plaintiff's claim as well as the defendant's counterclaim;  and (4) whether there is any logical relationship between the claim and the counterclaim.  An affirmative answer to any of the four questions indicates the claim is compulsory.

*Park Club, Inc. v. Resolution Trust Corp.,* 967 F.2d 1053, 1058 (5th Cir.1992) (citing *Plant v. Blazer Fin. Servs.,* 598 F.2d 1357, 1360 (5th Cir.1979)).  We have no difficulty concluding that Nautronix's counterclaims, including slander and commercial disparagement, satisfy the third and fourth tests cited above.  Therefore, these claims were compulsory and Nautronix was required to bring them once they had been sued by Schahin Cury and Rudgil.  *See McDaniel v. Anheuser-Busch, Inc.,* 987 F.2d 298, 304 (5th Cir.1993) ("A counterclaim which is compulsory but is not brought is thereafter barred.") (quoting *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974)).

independent adjudication by the court.

"[F]inality and appealability are not perfectly congruent. Some interlocutory orders are appealable under 28 U.S.C. § 1292." *O'Donnell,* 525 F.2d at 652. Although the court in *O'Donnell* was addressing the appealability of the district court's order dismissing the plaintiff's action against one co-defendant, that case and the instant case are analogous. In the instant case, the district court's decision to permit Underwriters' to replace Schahin Cury and Rudgil as the party plaintiff, without making a provision for Nautronix's counterclaims to remain pending for independent adjudication by the court, as discussed *infra,* effectively dismissed Nautronix's counterclaims against Schahin Cury and Rudgil. Therefore, we hold that an order that effectively dismisses a party from suit, without making provision for pending compulsory counterclaims, is appealable under § 1292(a)(3).

### ANALYSIS

Having determined that we have jurisdiction over this appeal we next must determine whether the trial court erred when it granted Underwriters' motion to substitute its name in place of Schahin Cury and Rudgil as the party plaintiff. A party may amend its pleadings only "by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). This court's review is limited to determining whether the trial court abused its discretion when it permitted Underwriters' amendment. *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.,* 690 F.2d 1157, 1163 (5th Cir.1982)

7

(internal citations omitted), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983).  Justice requires that "[e]very action shall be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17.  Therefore, central to a determination of whether the trial court abused its discretion when it permitted Underwriters' amendment is the question of whether Schahin Cury and Rudgill, at the time the original suit was filed in their name, were in fact real parties in interest.  If they were not, then the trial court's decision to permit the amendment would not only be correct but it would have been required by Rule 17.

If the insurer has paid the entire loss suffered by the insured, it is the only real party in interest and must sue in its own name.  *United States v. Aetna Casualty & Sur. Co.,* 338 U.S. 366, 379-81, 70 S.Ct. 207, 215, 94 L.Ed. 171 (1949) (citing 3 Moore, Federal Practice (2d Ed.) p. 1339).  However, if the insurer "has paid only part of the loss, both the insured[s] and the insurer ... have substantive rights against the tortfeasor which qualify them as real parties in interest."  *Id.*  In its brief, Schahin Cury acknowledged that "Underwriters and Schahin Cury are separate entities, with independent interests because *the full loss was not paid by Underwriters* " (emphasis added).  Thus, this is a case of partial subrogation, which means that Schahin Cury, Rudgil, and Underwriters are all real parties in interest.  Consequently, we must determine whether the trial court's decision to allow Underwriters to replace Schahin Cury and Rudgil, which effectively dismissed Nautronix' counterclaims, constituted an abuse of

8

discretion.

The decision to grant or deny a motion for leave to amend lies within the sound discretion of the trial court. *Addington v. Farmer's Elevator Mut. Ins. Co.,* 650 F.2d 663, 666 (5th Cir. Unit A) (citing *Layfield v. Bill Heard Chevrolet Co.,* 607 F.2d 1097, 1099 (5th Cir.1979), *cert. denied,* 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980)), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981). However, approval of a motion to amend is not automatic. *Addington,* 650 F.2d at 666. Denial of leave to amend may be required when allowing an amendment would cause undue prejudice to the opposing party. *See Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). We have previously recognized that it is an abuse of discretion for a trial court to deny a plaintiff's motion to amend when the denial of that motion could unduly prejudice the plaintiff's action as a result of res judicata implications. *See Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 600 n. 3 (5th Cir.1981) (noting that where res judicata might bar a subsequent action by the plaintiff, then the denial of a motion to amend in order to add that cause results in undue prejudice).

The converse situation is also true. Where the trial court's decision to grant a motion to amend could potentially bar the claims being asserted, then the granting of the amendment would result in undue prejudice to the party whose claims are potentially barred. *See Foman, supra.* When the trial court permitted the amendment in the instant case, it effectively dismissed Nautronix's compulsory counterclaims. Those counterclaims are potentially

barred by the statute of limitations.[3]  Therefore, the trial court's decision to permit the amendment in the instant case not only violated the express provisions of Fed.R.Civ.P. 41(a)(2), but it also unduly prejudiced Nautronix by potentially barring it from bringing its claims in a subsequent suit.  Consequently, we find that the trial court's decision to permit the amendment constituted an abuse of discretion.  Having determined that the trial court erred when it permitted the amendment, we need not reach Nautronix's other points of error.

CONCLUSION

For the foregoing reasons the district court's order of September 20, 1994, is VACATED.  The district court is ordered to reinstate Schahin Cury and Rudgil as parties-plaintiff, Nautronix's counterclaims are reinstated, and Schahin Cury's and Rudgil's First Amended Complaint is reinstated.  This ruling does not prohibit the district court from realigning the parties or from permitting Underwriters to prosecute its subrogation claims in its own name, so long as the substantive rights of the other parties are not affected by such orders.

---

[3]We express no opinion as to whether Nautronix's claims would actually be barred if brought in a separate action.  We simply recognize that there is a potential bar, which is sufficient to support our finding of undue prejudice.  *See Dussouy, supra.*