Abraham QUINTANILLA,
Jr. et al., Plaintiffs,

v.

TEXAS TELEVISION, INC. d/b/a
McKinnon Broadcasting Co.
d/b/a KIII–TV, Defendant.

Civil Action No. C–97–74.

United States District Court,
S.D. Texas,
Corpus Christi Division.

July 11, 1997.

Darrell Lee Barger, Barger & Moss, Corpus Christi, TX, Jaime L. Capelo, Jr., Corpus Christi, TX, for Plaintiffs.

Jorge C. Rangel, Rangel and Chriss, Corpus Christi, TX, for Defendant.

### ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND ORDER DISMISSING STATE LAW CLAIMS

JACK, District Judge.

On this day came on to be considered Defendant Texas Television, Inc. d/b/a McKinnon Broadcasting Co. d/b/a KIII–TV's Motion for Summary Judgment against Plaintiffs Abraham Quintanilla, Jr., Individually, d/b/a/ Selena y Los Dinos, and as Independent Administrator of the Estate of Selena Quintanilla Perez; Abraham Quintanilla, III, Individually and d/b/a AQIII Music and d/b/a Five Candles Music; Ricky Vela, Individually and d/b/a Lone Iguana Music; Pete Astudillo, Individually and d/b/a Peace Rock Music; and Christopher G. Perez. For the reasons stated herein, the Court GRANTS Defendant's Motion as to Plaintiffs' claims of copyright infringement and further DISMISSES Plaintiffs' state law causes of action.

### I. JURISDICTION

Plaintiffs filed suit in federal court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiffs also allege state law claims based on the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

### II. FACTS AND PROCEEDINGS

On February 7, 1993, Selena y Los Dinos, a band led by singer Selena Quintanilla Perez, performed at least sixteen musical compositions at a concert held in Corpus Christi Memorial Coliseum in Corpus Christi, Texas. This concert was recorded on videotape ("the Concert Videotape") by Defendant KIII–TV pursuant to an oral agreement made between Abraham Quintanilla, Jr. ("Quintanilla"), the band's organizer, agent and manager, and Jay Sanchez ("Sanchez"), a creative services director for KIII–TV and producer of the Domingo Show. Plaintiffs have made no allegation of a written contract, and the parties agree that it is only the alleged oral agree-

ment which gives rise to the Plaintiffs' claims of copyright infringement and their state law claims. (Initial Pre–Trial Conference Hr'g Tr. at 3.)

On or before July 12, 1993, each of the sixteen concert compositions were registered in the United States Copyright Office ("USCO"), except "Bidi Bidi Bom Bom" which was registered on July 28, 1995, and "Si La Quieres" for which registration was filed on February 6, 1997.[1] Registration for the Concert Videotape was filed with the USCO by Quintanilla on February 6, 1997.

Sometime after the tragic death of Selena Quintanilla Perez on March 31, 1995, KIII–TV began airing some portions of the Concert Videotape. On February 6, 1997, Plaintiffs filed the above-styled cause of action asserting (1) copyright infringement in violation of the federal Copyright Act, (2) breach of contract, (3) misappropriation of name or likeness, (4) fraud, (5) violation of the Texas Deceptive Trade Practices Act, and (6) negligent misrepresentation. On May 28, 1997, Defendant filed the instant Motion for Summary Judgment. Plaintiff responded on June 20, 1997. On July 11, 1997, the Court heard arguments as to the Motion. After hearing the arguments of counsel and in consideration of the documents and evidence in the record, the Court entered an oral Order granting Defendant's Motion for Summary Judgment as to Plaintiffs' claims of copyright infringement and dismissed the remaining state law claims. The Court now enters a written Order.

## III. DISCUSSION

### A. Standard of Review

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Judwin Properties, Inc. v. U.S. Fire Ins. Co.,* 973 F.2d 432, 435 (5th Cir.1992). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 189 (5th Cir.1996).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Wallace v. Texas Tech. Univ.,* 80 F.3d 1042, 1046–1047 (5th Cir. 1996). If the nonmovant bears the burden of proof, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2553; *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.,* 868 F.2d 740, 747 (5th Cir. 1989). Once the moving party has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Summary judgment evidence is subject to the same rules that govern admissibility of evidence at trial. *Resolution Trust Corp. v. Starkey,* 41 F.3d 1018, 1024 (5th Cir.1995) (citing *Munoz v. International Alliance of Theatrical Stage Employees,* 563 F.2d 205, 207 n. 1 (5th Cir.1977)). In considering a motion for summary judgment, the court cannot make credibility determinations, weigh the evidence, or draw inferences for the movant. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. However, the court must draw all justifiable inferences from the summary judgment evidence in the light most favorable to the nonmovant. *Id.* at 255, 106 S.Ct. at 2513; *Pasant v. Jackson Nat'l Life Ins. Co.,* 52 F.3d 94, 96 (5th Cir.1995).

---

1. The Plaintiffs to whom these sixteen concert compositions are registered are referenced here-

in collectively as "the Songwriters."

## B. Copyright Infringement Claims

■ In order to establish a claim for copyright infringement, a plaintiff must show (1) the plaintiff owned a valid copyright, and (2) the defendant impermissibly copied or otherwise infringed upon that copyright. *DSC Communications Corp. v. DGI Technologies, Inc.*, 81 F.3d 597, 600 (5th Cir.1996); *Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir.1995); *Plains Cotton Co-op. Ass'n v. Goodpasture Computer Serv., Inc.*, 807 F.2d 1256, 1259 (5th Cir.1987). "Copyright ownership is shown by proof of originality and copyrightability in the work as a whole and by compliance with applicable statutory formalities." *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994) (citation omitted). "[A] plaintiff has complied with the statutory formalities when the Copyright Office receives the plaintiff's application for registration, fee and deposit." *Lakedreams v. Taylor* 932 F.2d 1103 (5th Cir.1991); *Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384, 386–87 (5th Cir.1984).

In the instant suit, Plaintiffs have alleged that Abraham Quintanilla, Jr. exclusively owns a valid copyright to the Concert Videotape. Plaintiffs further allege that Defendant has infringed upon the Songwriters'

copyrights in the concert compositions. Defendant has moved for summary judgment on this claim and asserts that Quintanilla, cannot show that he owns such a copyright. Defendant also asserts that the Songwriters cannot establish a claim for copyright infringement.

### 1. Quintanilla's Copyright Claim

In response to the Motion for Summary Judgment, Plaintiffs argue that Quintanilla is the exclusive owner of the copyright interests in the Concert Videotape since Quintanilla and KIII–TV stood in an employer/employee relationship and the Concert Videotape qualifies as a "work made for hire." [2]

■ As a general rule, copyright ownership vests initially in the author; the author of a work is the party who actually creates the work—that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection. *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 737, 109 S.Ct. 2166, 2171, 104 L.Ed.2d 811 (1989). An exception to this general rule of authorship is the concept of "work made for hire." [3] *Community for Creative Non–Violence*, 490 U.S. at 737, 109 S.Ct. at 2171. The

---

**2.** After the Defendant filed a Motion to Dismiss and a Motion for Summary Judgment, Plaintiffs sought leave to file an Amended Complaint asserting that Quintanilla and KIII–TV had a joint ownership of the copyright in the Concert Videotape. However, Plaintiffs stated on the record that KIII–TV was the presumptive author of the Concert Videotape subject to the "work for hire" exception. (07/11/97 Motion Hr'g.) Therefore, the finding of no work for hire would perforce vest sole copyright ownership in KIII–TV. Plaintiffs tactical posture rendered their claim for sole copyright and in the alternative a joint copyright mutually exclusive. Moreover, the Court notes that the amendment of pleadings would also have been futile since there is no evidence that Quintanilla's contributions to the creation of the Concert Videotape amount to anything more than mere suggestions. *See Community for Creative Non–Violence*, 490 U.S. at 737, 109 S.Ct. at 2171 (To be an author, one must supply more than mere direction or ideas: one must "translate[ ] an idea into a fixed, tangible expression entitled to copyright protection."); *SOS, Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir.1989) ("A person who merely describes to an author what the commissioned work should do or look like is not a joint author for purposes of the Copyright Act."); *Easter Seal Soc.*, 815 F.2d at

324 (One who gives a number of layman's suggestions to another who fixes musical performance into a videotape is not the author of the videotape nor its sole copyright owner). Additionally, the Court notes that any claim for an accounting based on a joint copyright ownership arises under state law and is not a federal cause of action. *Goodman v. Lee*, 78 F.3d 1007, 1011–1012 & n. 16 (5th Cir.1996).

A party may amend its pleadings only "by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *State of La. v. Litton Mort. Co.*, 50 F.3d 1298, 1303 (5th Cir.1995). The decision to grant or deny leave to amend is within the discretion of the district court. *Underwriters at Interest v. Nautronix*, 79 F.3d 480, 484 (5th Cir.1996). In exercising its discretion, a court may consider such factors as the futility of amendment and the undue prejudice to the opposing party by virtue of allowance of the amendment. *State of La.*, 50 F.3d at 1303. It was in consideration of these factors that the Court denied Plaintiffs leave to amend.

**3.** The terms "work made for hire" and "work for hire" are used interchangeably in reference to the exception codified in 17 U.S.C. § 101.

owner of the copyright of a "work made for hire" is the person who requests that the work be created, and not the person who actually fixes the idea into a tangible medium. *Id.* A work is a "work made for hire" if (1) it is a work prepared by an employee within the scope of employment; or (2) it is one of nine specified exceptions ·and the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. 17 U.S.C. § 101. "A work is 'made for hire' within the meaning of the Copyright Act of 1976 if and only if the seller is an employee within the meaning of agency law, or the buyer and seller comply with the requirements of § 101(2)." *Easter Seal Soc. v. Playboy Enterprises,* 815 F.2d 323, 335 (5th Cir.1987).[4]

■ In determining whether an employer/employee relationship exists for purposes of a "work made for hire," courts should turn to general principles of agency law. *Community for Creative Non–Violence,* 490 U.S. at 742–43, 109 S.Ct. at 2174; *Easter Seal Soc.,* 815 F.2d at 335 & n. 19, 20 (noting the need for uniform interpretation of federal statutes). When determining whether a hired party is an employee under general agency law principles, the Court should consider: (1) hiring party's right to control the manner and means by which the product is accomplished, (2) the skill required, (3) the source of the instrumentalities and tools, (4) the duration of the relationship between the parties, (5) whether the hiring party had the right to assign additional projects to the hired party, (6) the extent of the hired party's discretion over when and how long to work, (7) the method of payment, (8) the hired party's role in the hiring and paying of assistants, (9) whether the work is part of the regular business of the hiring party, (10) the provision of employee benefits, and (11) the tax treatment of the hired party. *Community for Creative Non–Violence,* 490 U.S. at 751–51, 109 S.Ct. at 2178–79; *M.G.B. Homes, Inc. v. Ameron Homes,* 903 F.2d 1486, 1491 & n. 15 (11th Cir.1990); *Penn v. Howe–Baker Engineers, Inc.,* 898 F.2d 1096, 1102 (5th Cir.1990) (ERISA action).

■ Defendant KIII–TV has borne its summary judgment burden by pointing to the lack of evidence that an employer/employee relationship existed between Quintanilla and KIII–TV.[5] The videotaping of the concert was accomplished using KIII–TV's personnel and equipment. (Sanchez Dep. at 31, 90, 106, 123.) The videotape crew members were paid for their work at the concert by KIII–TV, and KIII–TV paid social security tax on these wages as well as provided insurance for the video crew on the night of the concert. (Brotherton Aff.) During the creation of the Concert Videotape, Sanchez simultaneously received four images from the four cameras capturing the Selena y Los Dinos performance, and Sanchez was solely responsible for selecting which of the four images to record. (Sanchez Dep. at 95–100.)

Plaintiffs respond by asserting that an employer/employee relationship exists based on (1) the extent of control exerted by Quintanilla and (2) Illustration 3 in the Restatement (Second) of Agency § 227.[6] The Court finds

---

4. In *Community for Creative Non–Violence,* the U.S. Supreme Court adopted the literal interpretation of the work for hire doctrine employed by the Fifth Circuit two years earlier in *Easter Seal Soc.*

5. There have been no allegations of work made for hire based on KIII–TV's status as an independent contractor since such an allegation would require the existence of a written agreement signed by the parties acknowledging that the Concert Videotape would be a work made for hire. The parties agree that no such written agreement exists.

6. Additionally, it appears from Plaintiffs' Response that Plaintiffs are now asserting that one or all of the three writings by Sanchez constitute

a transfer of KIII–TV's copyright ownership to Quintanilla. Plaintiff's have made no allegations to this type of transfer in their pleadings. Even if such allegations had been made, the Court finds that each of the three writings or all the writings in combination are insufficient to create a transfer of copyright ownership. *See,* 17 U.S.C. § 204(a) (A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of transfer is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.); *Effects Assocs., Inc. v. Cohen,* 908 F.2d 555, 557 (9th Cir.1990) (Section 204(a) writing requirement ensures that copyright ownership will not be given away inadvertently and forces parties who want to transfer copyright ownership to determine precisely what

that Plaintiffs' responses fail for the following reasons.

First, the summary judgment evidence demonstrates that Quintanilla's alleged control over the production of the Concert Videotape constitutes nothing more than mere suggestions. During the show, Quintanilla only communicated with one camera operator who was standing next to Quintanilla during the concert. (Abraham Quintanilla, Jr. Dep. at 51.) Quintanilla instructed the camera operator to "zero in" at certain points during the concert. (*Id.*) There is no evidence that the camera operator was obligated to follow Quintanilla's directions. Further, there is no evidence that Quintanilla ever advised Sanchez regarding which of the four images should be recorded onto the Concert Videotape. Quintanilla did have input as to the location of the cameras and the manner of lighting at the concert, however there is no evidence that Quintanilla's input was anything more than a mere suggestion. Quintanilla admits that his main concern was the end product, getting the concert put onto videotape and that as far as the actual recording it was KIII–TV's responsibility to get it done. (Quintanilla Dep. at 69–70.) Quintanilla also admits that he knows nothing about creating a videotape except that a camera is needed to record the concert and that he assumed Sanchez, as the producer of the videotape, would know what equipment was necessary. (Quintanilla Dep. at 36, 58, 69.) Quintanilla has submitted summary judgment evidence which establishes that he made arrangements for location of the concert (Quintanilla Dep. at 40), and arranged to set up the stage for the concert (Quintanilla

Dep. at 41). Although Quintanilla makes bare assertions of his original contributions to and control over the concert performance, there is no summary judgment evidence to support these allegations. Accordingly, the Court FINDS that Quintanilla's contribution to the creation of the Concert Videotape constitutes layman's suggestions and further FINDS that Quintanilla did not have the right to control the manner and means by which the recording of the Concert Videotape was accomplished.

In any event, "the extent of control the hiring party exercises over the details of the product is not dispositive." *Community for Creative Non–Violence*, 490 U.S. at 752, 109 S.Ct. at 2179 (noting that no single factor is determinative, and holding that although the hiring party retained an extensive right of control the other factors weighed heavily against finding an employment relationship); *Playboy Enterprises, Inc. v. Dumas*, 53 F.3d 549, 559 (2d Cir.1995) (to decide that an independent contractor is an employee simply because the hiring party actually controlled the work would thwart the purpose of § 101). Thus, even if the Court were to find that Quintanilla exerted some control over the creation of the Concern Videotape, this showing alone is insufficient to establish the existence of an employer/employee relationship.

Second, the Court finds Plaintiffs' analogy of the present case to Illustration 3 in the Restatement (Second) of Agency § 227 to be misplaced since Plaintiffs have not shown that Sanchez was working under the direction of Quintanilla.[7] Further, this Court's determination of an employer/employee rela-

---

rights are being transferred and at what price); *Konigsberg Intern. Inc. v. Rice*, 16 F.3d 355, 357 (9th Cir.1994) (The § 240(a) writing should also serve as a guidepost for the parties to resolve their disputes rather than looking to the courts every time they disagree as to whether a particular use of the work violates their mutual understanding); *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 413 (7th Cir.1992) (The writing need not include the word "copyright" but the writing must clearly establish that the parties intended to transfer a copyright interest); *Playboy Enterprises, Inc. v. Dumas*, 53 F.3d 549, 564 (2d Cir.1995) (noting that when a district court finds that the written agreement is ambiguous, it may conclude that the writing is insuffi-

cient to create a transfer under § 204(a) and affirming district court determination that a writing which assigned "all right, title and interest" in an item was insufficient to transfer ownership of copyright in that item under § 204(a)).

**7.** As set forth in Plaintiffs' response, Illustration 3 states that "P, a master carpenter, by agreement with B, sends A, a skilled cabinetmaker, to work with B's servants for a week, under the direction of B's fore(person), in the reconstruction of a stairway. For this B is to pay P an agreed amount. A acts as the servant of B in building the stairway." Plaintiffs analogize A to Sanchez, P to KIII–TV and B to Quintanilla. As explained above, this analogy is misplaced.

tionship is controlled by the general agency factors listed in *Community for Creative Non–Violence,* and any similarity between the present case and an illustration cannot override such an examination. *See M.G.B. Homes, Inc. v. Ameron Homes,* 903 F.2d 1486, 1491 & n. 15 (11th Cir.1990); *Penn v. Howe–Baker Engineers, Inc.,* 898 F.2d 1096, 1102 (5th Cir.1990).

Finally, it is unclear from the pleadings if Quintanilla is attempting to assert a claim of copyright infringement on behalf of the Songwriters or pursuant to his relationship with the Songwriters. However, the bare allegation of Quintanilla in the pleadings alone that he owns the voices, identities, and likenesses of these Songwriters is not only violative of the Thirteenth Amendment but is also no indication that Quintanilla stands in the shoes of the Songwriters for the purposes of a copyright infringement action.[8]

After examining the summary judgment evidence in the light most favorable to the Plaintiffs, the Court FINDS: (1) there is no evidence that Quintanilla had the right to control the manner and means by which the product is accomplished and further that Quintanilla's contributions amount to the mere layman's suggestions, (Sanchez Dep. at 30, 92, 95–100; Quintanilla Dep. 36, 51, 69–70); (2) KIII–TV owned the tools and instrumentalities by which the Concert Videotape was created, (Sanchez Dep. at 31, 90, 106, 123; Quintanilla Dep. at 36, 60); (3) there is no evidence that the relationship between the Quintanilla and KIII–TV was to last beyond the creation of the Concert Videotape, (Quintanilla Dep. at 66); (4) there is no evidence that Quintanilla had the right to assign additional projects to KIII–TV, (Quintanilla Dep. at 66); (5) KIII–TV was responsible for the hiring and paying of the camera crew, (Quintanilla Dep. at 65–66); (6) videotaping of events and creation of videotapes is part of the regular business of KIII–TV (Quintanilla Dep. at 61–64); (7) KIII–TV provided employee benefits to the camera crew during the creation of the Concert Videotape, (Brotherton Aff.); and (8) there is no evi-

dence that Quintanilla treated KIII–TV or any of the camera crew as employees for tax purposes, (Initial Pre–Trial Hr'g Tr. at 10–12; Quintanilla Dep. at 65, 67). Thus, the Court is convinced and hereby CONCLUDES that no employer/employee relationship existed between Quintanilla and KIII–TV, and accordingly CONCLUDES that the Concert Videotape was not a work made for hire. Therefore, the Court FINDS that as to Quintanilla and KIII–TV, KIII–TV has sole copyright ownership. Thus, no claim for copyright infringement exists against KIII–TV.

## 2. Songwriters' Copyright Claims

■ As to the Songwriters claims of copyright infringement, an owner of a copyright has the exclusive right to prepare a derivative work based upon the copyrighted work. 17 U.S.C. § 106. It is uncontested that KIII–TV was authorized to create the Concert Videotape. However, the Fifth Circuit rejected out of hand the contention that the copyright to a videotape of a musical performance should belong exclusively to the musicians when the creation of the videotape constituted more than turning on one camera but instead was a dynamic effort made in cooperation with the performers. *Easter Seal Soc.,* 815 F.2d 323, 336 (5th Cir.1987). Although the Fifth Circuit held that a fixation into a videotape of a musical performance which is sufficiently creative and original is a work of authorship and creates a joint-authorship between the performers and those who fix the performance onto the videotape, *Easter Seal Soc.,* 815 F.2d at 337, the Songwriters in the present case have never asserted a cause of action for joint ownership nor have the Plaintiffs sought leave to amend the pleading to assert a cause of action for joint ownership on behalf of the Songwriters. The use of a work by a co-author and joint copyright owner does not constitute infringement of a copyright interest. *Easter Seal Soc.,* 815 at 337.

---

**8.** A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of transfer is in writing and signed by the owner

of the rights conveyed or such owner's duly authorized agent. 17 U.S.C. § 204(a). There is no evidence that Quintanilla and the Songwriters had any written transfer of a copyright interest.

The Court FINDS that KIII–TV did more than set up one camera and turn it on to create the Concert Videotape. The Court FINDS that KIII–TV's creation of the Concert Videotape was a dynamic effort involving the efforts of a camera crew with four cameras and the efforts of Sanchez in fixing one of the four transmitted images onto the Concert Videotape. Accordingly, the Court CONCLUDES that KIII–TV has not infringed upon the Songwriters' copyrights.

## C. State Law Claims

The Court FINDS that it had and continues to have supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. However, the doctrine of supplemental jurisdiction is one of discretion. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In exercising this discretion, the district court should consider judicial economy, convenience, fairness, and comity. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988) (citing *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138). The usual rule in the Fifth Circuit is to dismiss state claims when the federal claims to which they are pendent are dismissed. *Parker & Parsley Petroleum v. Dresser Indus.,* 972 F.2d 580, 585 (5th Cir.1992); *Wong v. Stripling,* 881 F.2d 200, 204 (5th Cir.1989). This Court FINDS that the balance of these factors in the present case militate in favor of dismissing the state law claims. *See Cohill,* 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7 ("[I]n the usual case in which all federal law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state law claims.")

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiffs' claims of copyright infringement, and further DISMISSES Plaintiffs' remaining state law causes of action.